1  WHITE & CASE LLP
   FERNANDO L. AENLLE-ROCHA (State Bar No. 129515)
2  DEVON MYERS  (State Bar No. 240031)
   633 West Fifth Street, Suite 1900
3  Los Angeles, CA 90071-2007
   Tel: (213) 620-7700
4  Fax: (213) 452-2329
   faenlle-rocha@whitecase.com
5  dmyers@whitecase.com

6  GEORGE J. TERWILLIGER III (Admitted Pro Hac Vice)
   DARRYL S. LEW (Admitted Pro Hac Vice)
7  701 Thirteenth Street, N.W.
   Washington, D.C. 20005
8  Tel: (202) 626-3600
   Fax: (202) 639-9355
9  gterwilliger@whitecase.com
   dlew@whitecase.com
10
   Attorneys for Defendants
11 Consortium de Réalisation S.A. and CDR Entreprises

12 CLEARY GOTTLIEB STEEN & HAMILTON LLP
   LAWRENCE B. FRIEDMAN (Admitted Pro Hac Vice)
13 AVRAM E. LUFT (Admitted Pro Hac Vice)
   One Liberty Plaza
14 New York, New York 10006
   Tel:  (212) 225-2000
15 Fax:  (212) 225-3999
   lfriedman@cgsh.com
16 aluft@cgsh.com

17 Attorneys for Crédit Lyonnais S.A.

18                    UNITED STATES DISTRICT COURT

19              FOR THE CENTRAL DISTRICT OF CALIFORNIA

20                          WESTERN DIVISION

21 UNITED STATES OF AMERICA,              )  Case No. CR 03-760-ODW
                                          )
22                      Plaintiff,         )  **CRÉDIT LYONNAIS S.A.,**
                                          )  **CONSORTIUM DE REALISATION**
23                                        )  **S.A., AND CDR-ENTREPRISES'**
                        v.                )  **OPPOSITION TO AIG**
24                                        )  **RETIREMENT SERVICES, INC.'S**
   CREDIT LYONNAIS, et al.,               )  **MOTION TO UNSEAL**
25                                        )  **INDICTMENT**
                        Defendants.        )
26                                        )
                                          )  **[DECLARATION OF FERNANDO L.**
27                                        )  **AENLLE-ROCHA AND EXHIBITS FILED**
                                          )  **CONCURRENTLY HEREWITH]**
28                                        )

LOSANGELES 924491 (2K)                    CRÉDIT LYONNAIS AND THE CDR PARTIES' OPPOSITION TO
                                          AIG'S MOTION TO UNSEAL INDICTMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

)
)
)
)
)
)
)
)
)

**DATE:** **AUGUST 29, 2011**
**TIME:** **10:00 A.M.**
**COURTROOM:** **11**

**PRETRIAL CONF.:** **NONE**
**TRIAL DATE:** **NONE**

CRÉDIT LYONNAIS AND CDR PARTIES' OPPOSITION TO
AIG'S MOTION TO UNSEAL INDICTMENT

Crédit Lyonnais S.A. ("Crédit Lyonnais" or "CL"), Consortium de Réalisation S.A. ("CDR"), and CDR Entreprises, formerly known as Altus Finance S.A., ("CDR-E" and, together with CDR, the "CDR Parties"), hereby oppose AIG Retirement Services, Inc.'s, formerly known as SunAmerica Inc. ("AIG"), Motion to Unseal Indictment.

AIG's Motion should be denied for several reasons.  First, the sealed Indictment which AIG seeks is irrelevant to its claims in the civil action styled <u>AIG Retirement Services, Inc. v. Altus Finance S.A., et al.</u>, Case No. CV 05-1035-JFW (CWx).  Second, AIG fails to articulate a legitimate need for disclosure of the sealed Indictment.  Finally, under an analysis of both the First Amendment and common law rights of access, the privacy interests of individuals named in the Indictment, but never prosecuted, and the public interest in respecting bargained-for binding plea agreements outweigh AIG's request for expansive discovery of an irrelevant and inadmissible sealed Indictment.[1]

Respectfully submitted,

Dated:  August 8, 2011

WHITE & CASE LLP

By:_____*/s/ Fernando L. Aenlle-Rocha*
          Fernando L. Aenlle-Rocha

*Attorneys for Consortium de Réalisation S.A. and CDR Entreprises, formerly known as Altus Finance S.A.*

Dated:  August 8, 2011

CLEARLY GOTTLIEB STEEN & HAMILTON LLP

By:_____*/s/ Avram E. Luft*_____
          Avram E. Luft

*Attorneys for Crédit Lyonnais S.A.*

_____
[1] In filing this opposition, CL and the CDR Parties do not intend to and do not waive any of their rights or defenses under Article 15 of the French Civil Code in this or any other proceeding.

- 1 -

CRÉDIT LYONNAIS AND CDR PARTIES' OPPOSITION TO AIG'S MOTION TO UNSEAL INDICTMENT

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.      INTRODUCTION .......................................................................... 1

II.     FACTS........................................................................................... 5

    A.      Grand Jury Proceeding and Sealed Indictment..................................... 5

    B.      The Court in the Civil Case Has Consistently Rejected AIG's Repeated Attempts To Obtain Grand Jury and Indictment-Related Information ............................................................... 6

III.    ARGUMENT ................................................................................ 7

    A.      The Sealed Indictment Is Irrelevant to AIG's Claims in the Civil Case .................................................................................. 7

    B.      The Indictment Should Remain Permanently Sealed ......................... 10

        1.      AIG Does Not Have a Right of Access to the Sealed Indictment under the First Amendment.................................... 11

        2.      AIG Does Not Have a Common Law Right of Access to the Sealed Indictment ................................................. 15

IV.     CONCLUSION ............................................................................ 17

CRÉDIT LYONNAIS AND CDR PARTIES' OPPOSITION TO
AIG'S MOTION TO UNSEAL INDICTMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

4

### <u>FEDERAL CASES</u>

5 AIG Retirement Services, Inc. v. Altus Finance S.A.,
6    Nos. 07-56019, 07-56679, 2010 WL 510620 (9th Cir. Feb. 9, 2010)................ 9

7 In re Copley Press, Inc.,
   518 F.3d 1022 (9th Cir. 2008) .......................................................... 1, 15

8 Foltz v. State Farm Mut. Auto. Ins. Co.,
9    331 F.3d 1122 (9th Cir. 2003) ............................................................... 15

10 Globe Newspaper Co. v. Superior Court,
   457 U.S. 596, 73 L. Ed. 2d 248, 102 S. Ct. 2613 (1982) ................................... 11

11 Kamakana v. City & County of Honolulu,
12    447 F.3d 1172 (9th Cir. 2006) .............................................................. 15

13 Masterson v. Huerta-Garcia,
   No. 2:07-cv-1307-KJD-PAL, 2010 WL 4053924 (E.D. Cal. Sept. 30,
14    2010) .......................................................................................... 8

15 Nixon v. Warner Commc'ns, Inc.,
   435 U.S. 589, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978) ............................... 15, 16

16 Press-Enter. Co. v. Superior Court,
17    478 U.S. 1, 92 L. Ed. 2d 1, 106 S. Ct. 2735 (1986) .................................... 11

18 Santobello v. New York,
   404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971) ................................. 12

19 Scholes v. African Enter., Inc.,
20    854 F. Supp. 1315 (N.D. Ill. 1994)....................................................... 8

21 Surfvivor Media, Inc. v. Survivor Prods.,
   406 F.3d 625 (9th Cir. 2005)............................................................... 7

22 United States v. Amodeo,
23    71 F.3d 1044 (2d Cir. 1995) ............................................................. 16

24 United States v. Clark,
   218 F.3d 1092 (9th Cir. 2000) ........................................................... 12

25 United States v. Corbitt,
26    879 F.2d 224 (7th Cir. 1989) ............................................................ 13

27 United States v. Keller,
   902 F.2d 1391 (9th Cir. 1990) ....................................................... 12, 13

28

- ii -

CRÉDIT LYONNAIS AND CDR PARTIES' OPPOSITION TO
AIG'S MOTION TO UNSEAL INDICTMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States v. Kott,
    380 F. Supp. 2d 1122 (C.D. Cal. 2004)..................................................10, 11, 12

United States v. Locklin,
    530 F.3d 908 (9th Cir. 2008) ..................................................................................8

United States v. McVeigh,
    119 F.3d 806 (10th Cir. 1997)....................................................................8, 11, 13

United States v. Smith,
    776 F.2d 1104 (3d Cir. 1985) ..................................................................1, 16, 17

## **FEDERAL RULES**

Fed. R. Civ. P. 26(b)(1) ..............................................................................................8

Fed. R. Crim. P. 11(c)(1)(C)......................................................................................12

- iii -

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.

3

## <u>INTRODUCTION</u>

4

This Court should deny AIG's latest attempt to gain access to the sealed

5

Indictment in this case.[2]  In its Motion, AIG argues the Court should unseal the

6

Indictment on the ground that it would be in the "public" interest notwithstanding

7

that the true purpose for which AIG seeks the Indictment is to conduct further

8

speculative discovery in private litigation with the intent to use the Indictment

9

against Defendants at trial.  What AIG omits from its Motion is that this request is

10

the latest in a series of similar requests AIG has made to other courts and

11

governmental entities, all of which have been correctly denied.[3]  This Court should

12

13

_____

14
[2] As a preliminary matter, AIG's motion remains procedurally defective.  As a non-party to this criminal action, AIG should move to intervene in the action before the relief it seeks can be granted.  In re Copley Press, Inc., 518 F.3d 1022, 1025 (9th

15
Cir. 2008); United States v. Smith, 776 F.2d 1104, 1106 (3d. Cir. 1985).  As a result, the Court, therefore, should deny AIG's Motion as procedurally improper.

16

17
Should the Court decline to deny the Motion as improper, CL and the CDR Parties understand this Court may recuse itself from hearing this matter.  CL and the CDR

18
Parties understand this Court may recuse itself from hearing this matter.  At the July 1, 2011, hearing regarding AIG's most recent motion to unseal grand jury

19
related pleadings and testimony in the action styled AIG Retirement Services, Inc. v. Altus Finance S.A., et al., Case No. CV 05-1035-JFW (CWx), the Honorable

20
John F. Walter stated that this Court may choose to rule on AIG's motion to unseal the sealed Indictment or, should this Court recuse itself from hearing such a motion,

21
"the [C]entral [D]istrict has procedures in place to reassign the motion."  Aenlle-Rocha Decl. at Ex. A at 47.  In the event this Court decides to recuse itself from

22
deciding this Motion, it would serve judicial efficiency to assign this Motion to Judge Walter, who is already familiar with the procedural history and factual and

23
legal issues of this case.  Alternatively, if this Court elects to hear the Motion, it may make a preliminary finding as to whether a public right of access to the sealed

24
Indictment exists and refer the Motion to Judge Walter for final determination as to whether AIG has demonstrated a legitimate need for disclosure of the sealed

25
Indictment given his familiarity with that action.

26
[3] AIG has moved on three prior occasions for the release of grand jury materials.  All three motions have been denied.  AIG has also moved to compel the production

27
of documents relating to confidential communications between the defendants and the U.S. Attorney's Office.  That motion also was denied.  Aenlle-Rocha Decl. at

28
Ex. B at 156.

1   similarly deny AIG's Motion because it has no more merit than any of the

2   previously denied requests.

3          On May 23, 2011, AIG asked the Honorable John F. Walter, who presides

4   over the civil action styled <u>AIG Retirement Services, Inc. v. Altus Finance S.A., et

5   al.</u>, Case No. CV 05-1035-JFW (CWx) ("Civil Case"), to unseal the original

6   Indictment in this matter.  In its motion to Judge Walter, AIG also sought to unseal

7   other materials from a related criminal miscellaneous matter that preceded this

8   criminal action, styled <u>In re Grand Jury Investigation</u>, Case No. CR Misc. 03-158-

9   JFW ("Grand Jury Proceeding") on the same grounds raised here.  Declaration of

10  Sierra Elizabeth ("Elizabeth Decl.") at Ex. 9.  Judge Walter denied AIG's motion to

11  unseal documents in the Grand Jury Proceeding, concluding that AIG's "vague,

12  generalized, and speculative assertions are completely insufficient to demonstrate a

13  legitimate need" for sealed court documents.  Declaration of Fernando L. Aenlle-

14  Rocha ("Aenlle-Rocha Decl.") at Ex. A at 59.  Judge Walter denied AIG's request

15  to unseal the Indictment because he did not have jurisdiction over this matter and

16  found that AIG should have directed that portion of its request to this Court.[4]

17  Aenlle-Rocha Decl. at Ex. A at 14.

18         The Indictment at issue was sealed in 2003 at the Government's request

19  following its return by the grand jury.  Aenlle-Rocha Decl. ¶ 2.  It remained under

20  seal thereafter and was ordered permanently sealed in this matter pursuant to the

21  terms of: (1) the binding plea agreement between the Government and CL, the CDR

22  Parties, MAAF, and Jean-Claude Seys, and (2) the non-criminal settlement

23  agreement between the Government and Artemis S.A. ("Artemis").  Government's

24  Opposition to AIG Retirement Services, Inc.'s Motion to Unseal Indictment

---

[4] Prior to the hearing on AIG's motion to unseal pleadings and grand jury testimony
filed in the Civil Case, Judge Walter had the Grand Jury Proceeding transferred to
himself because no judge was assigned to the matter following Judge Tevrizian's
retirement.  Accordingly, Judge Walter had authority to deny AIG's request for the
sealed pleadings and testimony in the Grand Jury Proceeding and to order the
disclosure of the grand jury testimony of Francois Pinault.

1   ("Government's Opp'n") at Ex. A at 1-2.  Upon entry of the aforementioned

2   agreements, the Indictment was superseded by a First Superseding Information, the

3   operative charging instrument upon which the plea and settlement agreements were

4   based.  Aenlle-Rocha Decl. ¶ 3.

5        Against this background, the Court should deny AIG's Motion because it

6   advances no legally defensible ground to justify unsealing the Indictment.  AIG

7   seeks access to the sealed Indictment to: (1) give it to its experts so they may make

8   speculative predictions about how the United States Attorney's Office ("USAO") or

9   the Board of Governors of the Federal Reserve System ("Federal Reserve") might

10  have acted had certain information come to light years earlier; and (2) glean

11  material with which to unfairly tarnish CL and the CDR Parties in its upcoming

12  trial in the Civil Case.  Neither of these "needs" is persuasive.

13       As an initial matter, the sealed Indictment is neither admissible in the Civil

14  Case nor relevant to AIG's claims.  An indictment is not evidence and has no

15  probative value.  Further, the sealed Indictment was not the basis for any of the

16  pleas entered in the criminal action and its allegations do not address any allegedly

17  fraudulent conduct purportedly directed by the defendants in the Civil Case ("civil

18  defendants") at AIG.[5]  Additionally, given that discovery in the Civil Case is

19  closed, the Indictment is unlikely to lead to any admissible evidence relevant to

20  AIG's claims.

21       AIG's speculative claim that the allegations in the sealed Indictment <u>might</u>

22  possibly lead to evidence to support its theories about how the USAO or Federal

23  Reserve might have acted is insufficient to justify disclosure.  Trying to predict how

24

---

25  [5] As set forth in CL and the CDR Parties' opposition to AIG's most recent motion
    to disclose grand jury material, no AIG representative ever testified before the
26  grand jury and AIG has presented no evidence that the grand jury investigation
    focused on any fraud allegedly perpetrated against AIG by any of the defendants in
    this action.  Opposition to AIG's Motion for Release of Grand Jury Materials, <u>AIG</u>
27  <u>Retirement Services, Inc. v. Altus Finance S.A.</u>, Case No. CV 05-1035-JFW
    (CWx), Docket #576, filed April 12, 2011.
28

- 3 -

1    a government agency would have exercised its discretion years earlier in

2    hypothesized circumstances is inherently speculative and is not made less so by

3    disclosing a sealed document created years after the events at issue.  Judge Walter

4    and Magistrate Judge Woehrle, who oversaw the extensive discovery in the Civil

5    Case, and the Federal Reserve have reached that conclusion.  For example, Judge

6    Walter previously excluded the testimony of AIG's expert witness, who sought to

7    "predict" that the California Insurance Commissioner would have acted differently

8    if information had come to light earlier.  Magistrate Judge Woehrle denied AIG's

9    motion to compel disclosure of documents relating to communications between the

10   civil defendants and the USAO, which involved the same claim of relevance AIG

11   makes here.  Aenlle-Rocha Decl. at Ex. B at 156.  And the Federal Reserve recently

12   denied a virtually identical request by AIG to obtain Confidential Supervisory

13   Information ("CSI") from the Federal Reserve concerning the Federal Reserve's

14   investigation undertaken from 1999 to 2003.  Aenlle-Rocha Decl. at Ex. C at 240.

15       Importantly, AIG does not seek to vindicate any public interest through this

16   Motion to obtain the sealed Indictment, but instead moves to advance its own

17   private litigation interests.  Contrary to AIG's broad assertions that it is entitled to

18   access the sealed Indictment, any right of access it has under the common law or

19   First Amendment is qualified, not absolute.  In analyzing these rights of access,

20   courts balance the interests of the party seeking access against the countervailing

21   interests in maintaining the document under seal.  Here, the privacy interests of

22   individuals named in the Indictment, but never prosecuted, and the public interest in

23   respecting plea agreements and negotiated settlements outweigh any speculative

24   private litigation interest AIG may have in accessing the sealed Indictment.

25       In sum, AIG's Motion seeks to unseal an Indictment against both the public

26   interest and the interests of private individuals, all in an effort to obtain unproven

27   allegations that lack evidentiary value.  AIG's request to unseal the Indictment after

28   the close of discovery in the Civil Case is nothing more than an impermissible

- 4 -

CRÉDIT LYONNAIS AND CDR PARTIES' OPPOSITION TO
AIG'S MOTION TO UNSEAL INDICTMENT

"fishing expedition" and indicative of AIG's persistent overreaching for documents to which it is not entitled.  Accordingly, this Motion should be denied.

## II.

## FACTS

**A.      Grand Jury Proceeding and Sealed Indictment**

In 2002, a federal grand jury was impaneled to hear evidence of alleged violations of federal laws related to the rehabilitation of Executive Life Insurance Company.  On July 30, 2003, the grand jury returned an Indictment that was sealed at the USAO's request that same day.  Aenlle-Rocha Decl. at ¶ 2.  The Indictment names not only parties that eventually entered plea or settlement agreements that are public, but also individuals who were never prosecuted and whose identity and involvement in this Indictment have remained under seal.  Id.

On December 17, 2003, certain civil defendants in AIG's Civil Case, namely CL, CDR-E, and MAAF, along with a third-party witness Jean-Claude Seys, executed a binding plea agreement with the USAO (the "plea agreement").  As part of the plea agreement, the USAO dismissed the charges in the Indictment against CL and the CDR Parties.  Elizabeth Decl. at Ex. 2 at 101.  The USAO also undertook the obligation to move for an order to permanently seal the Indictment.  Elizabeth Decl. at Ex. 2 at 105-06.  The USAO reserved the right to unseal the Indictment if charges in any superseding indictment were time-barred.  Id.

On January 21, 2004, the Court accepted the terms of the plea agreement and ordered that the Indictment remain under seal.  Government's Opp'n at Ex. A at 1-2.  Today, the Indictment remains sealed and in the custody of this Court.  Aenlle-Rocha Decl. at ¶ 2.  As acknowledged by AIG, CL and the CDR Parties do not possess a copy of the Indictment, although they were afforded the opportunity to inspect it in 2003.  Aenlle-Rocha Decl. at ¶ 4.

- 5 -

**B.** **The Court in the Civil Case Has Consistently Rejected AIG's Repeated Attempts To Obtain Grand Jury and Indictment-Related Information**

On May 2, 2011, the parties held a meet and confer related to this Motion. AIG stated that it intended to use the Indictment to inform the testimony of an expert witness on the hypothetical reaction of the USAO and Federal Reserve if the alleged fraud had been disclosed in 1993, including whether the civil defendants' interest in the insurance company assets would have been divested. Aenlle-Rocha Decl. at ¶ 8.

On May 23, 2011, AIG filed a motion in the Civil Case to unseal the sealed Indictment in this case and pleading and grand jury testimony from the Grand Jury Proceeding. Elizabeth Decl. at Ex. 9. On July 1, 2011, Judge Walter denied AIG's motion (with the exception the grand jury testimony of Francois Pinault) and declined to unseal the Indictment.[6] Aenlle-Rocha Decl. at Ex. A at 47. At the same hearing, Judge Walter also denied AIG's request to unseal an August 15, 2003 order applying the crime-fraud exception to communications between Artemis and its attorneys and related pleadings in the Grand Jury Proceeding. Aenlle-Rocha Decl. at Ex. A at 59. In so ruling, Judge Walter rejected arguments identical to those put forth by AIG in this Motion. Judge Walter concluded that AIG had no First Amendment Right to the sealed order and related sealed pleadings, finding that AIG "feigns concern over the public interest," but "merely wants these materials for its own private litigation" and that "the incremental value and public access in this case is minimal in comparison to significant privacy interests."

---

[6] The May 23 motion was AIG's third attempt to gain access to grand jury materials that originated in the Grand Jury Proceeding and were disclosed on a limited basis in a different civil case. The court had denied both of AIG's previous motions. In his most recent and final ruling, Judge Walter denied AIG's request for grand jury materials finding (with the exception of the Pinault testimony) even where AIG bore a "lesser burden in showing justification for the release of the materials," AIG did not establish "a sufficient particularized and compelling need for the disclosure." Aenlle-Rocha Decl. at Ex. A at 32-37.

- 6 -

1   Aenlle-Rocha Decl. at Ex. A at 54-55.  Judge Walter also found that AIG had no

2   common law right of access where AIG's purported justifications for accessing the

3   sealed pleadings (the same arguments put forth in this Motion) were "vague,

4   generalized, and speculative assertions . . . completely insufficient to demonstrate a

5   legitimate need." Aenlle-Rocha Decl. at Ex. A at 59.

6          Judge Walter's denial of AIG's motion to unseal pleadings and grand jury

7   testimony is only the most recent ruling against AIG's various attempts to gather

8   confidential and sealed documents.  In late June 2011, AIG attempted to obtain

9   documents relating to confidential communications between the civil defendants

10  and the USAO regarding information requests and responses sent as part of the

11  USAO's investigation.  Magistrate Judge Woehrle denied AIG's motion, citing

12  "fundamental concerns about the confidentiality of a criminal investigation and the

13  communications related to that investigation," and concluded that AIG had failed to

14  show that such evidence would be relevant to its claims.  Aenlle-Rocha Decl. at Ex.

15  B at 156.

16                                    **III.**

17                                **ARGUMENT**

18  **A.    The Sealed Indictment Is Irrelevant to AIG's Claims in the Civil Case**

19         AIG's Motion should be denied because the Indictment AIG seeks to unseal

20  is beyond the scope of permissible discovery.  "Litigants 'may obtain discovery

21  regarding any matter, not privileged, that is relevant to the claim or defense of any

22  party.'"  Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir.

23  2005) (citing Fed. R. Civ. P. 26(b)(1)).  "Relevant information for purposes of

24  discovery is information reasonably calculated to lead to the discovery of

25  admissible evidence." Id. (internal quotations and citations omitted).  "District

26  courts have broad discretion in determining relevancy for discovery purposes." Id.

27  (affirming the magistrate judge's limitation on discovery) (citation omitted).

28  Moreover, courts have a duty to pare down overbroad discovery requests by

- 7 -

CRÉDIT LYONNAIS AND CDR PARTIES' OPPOSITION TO
AIG'S MOTION TO UNSEAL INDICTMENT

1    weighing the value of the material sought against the burden of providing it and

2    considering whether the discovery will further society's interest for seeking truth.

3    <u>Masterson v. Huerta-Garcia</u>, No. 2:07-cv-1307-KJD-PAL, 2010 WL 4053924 at *4

4    (E.D. Cal. Sept. 30, 2010).

5           Here, the document at issue is a sealed Indictment that is not under the

6    control of any of the litigants in the Civil Case; rather, it is an official record in the

7    custody of the Court.  It is also not a document prepared by any of the parties to the

8    litigation, but is rather a set of allegations prepared by the USAO and returned by a

9    federal grand jury.

10          There is no sound basis to allow the unsealing and production of the

11   Indictment to be used in the pending Civil Case.  "Neither tradition nor logic

12   supports public access to inadmissible evidence." <u>United States v. McVeigh</u>, 119

13   F.3d 806, 813 (10th Cir. 1997).  The sealed Indictment, which is nothing more than

14   a collection of allegations, is not reasonably calculated to lead to the discovery of

15   admissible evidence, even assuming that the discovery period in the Civil Case had

16   not already closed (which it did on July 1, 2011).  Fed. R. Civ. P. 26(b)(1).  For this

17   reason, it is well-established that an indictment is not evidence and has no probative

18   value at trial.  <u>See, e.g.</u>, <u>United States v. Locklin</u>, 530 F.3d 908, 912 (9th Cir. 2008)

19   (noting that the district court correctly instructed the jury that the First Superseding

20   Indictment was not evidence);  <u>Scholes v. African Enter., Inc.</u>, 854 F. Supp. 1315,

21   1324 (N.D. Ill. 1994) (declining to consider an indictment as part of the evidentiary

22   record on summary judgment because the indictment contained mere allegations).

23          Further undercutting any possible probative value the sealed Indictment

24   could possess is that the sealed Indictment was not the operative charging

25   instrument in this case.  With respect to CL and CDR-E, the allegations in the

26   sealed Indictment were superseded by a First Superseding Information, which

27   formed the basis for the plea agreement.  Aenlle-Rocha Decl. at ¶ 3.  For the

28   individuals who were never prosecuted, the allegations were dismissed.  <u>Id.</u>

- 8 -

1    Moreover, pursuant to the plea agreement entered into between CL, the CDR

2    Parties, MAAF, and the USAO, the USAO agreed to dismiss all charges in the

3    sealed Indictment that were not resolved by the plea agreement.  Elizabeth Decl. at

4    Ex. 2 at 101.

5              As noted above, although not expressly stated in Plaintiff's Motion,

6    Memorandum of Points and Authorities, or Proposed Order, AIG stated in its May

7    2, 2011 meet and confer that it intended to use the sealed Indictment to inform the

8    testimony of an expert witness on the hypothetical reaction of the USAO and

9    Federal Reserve if the alleged fraud had been disclosed in 1993, including whether

10   the civil defendants' interest in the insurance company assets would have been

11   divested.  Aenlle-Rocha Decl. ¶ 8.  AIG's asserted "legitimate need," however, is

12   based solely on its speculation that the Indictment's "allegations [] are more

13   extensive and more wide-ranging than the plea agreements themselves."  Pl.'s

14   Mem. of P. & A. at 9.

15             Even if true, this argument fails to recognize that the sealed Indictment

16   contains nothing more than unproven allegations—a point made more significant

17   by the fact that none of the civil defendants pleaded guilty to charges contained in

18   the sealed Indictment.  Moreover, Judge Walter, in the Civil Case, previously

19   disallowed the very type of speculative "expert" testimony AIG seeks to inform and

20   support by obtaining the sealed Indictment.  Aenlle-Rocha Decl. at Ex. D at 256,

21   n.22 ("In light of [the proposed expert's] own testimony that the Commissioner

22   himself is the best person to speak to how the Commissioner would have acted in

23   the Spring of 1993, the Court finds that [the proposed expert's] alleged 'specialized

24   knowledge' is based on nothing more than his personal or subjective beliefs and

25   unsupported speculation.").  On appeal, the Ninth Circuit affirmed Judge Walter's

26   ruling to exclude such testimony.  <u>AIG Retirement Services, Inc. v. Altus Finance

27   S.A.</u>, Nos. 07-56019, 07-56679, 2010 WL 510620, *1 (9th Cir. Feb. 9, 2010)

28   (unpublished).

CRÉDIT LYONNAIS AND CDR PARTIES' OPPOSITION TO
AIG'S MOTION TO UNSEAL INDICTMENT

1      Given the speculative purpose for which AIG seeks the sealed Indictment

2   and the minimal, if any, probative value of any allegations contained therein, the

3   sealed Indictment is irrelevant to AIG's claims in the Civil Case.[7]  Accordingly,

4   AIG's Motion should be denied.

5   **B.      The Indictment Should Remain Permanently Sealed**

6          AIG incorrectly argues that it has a right of access to the sealed Indictment.

7   As the Government asserts in its opposition to AIG's Motion, there is no general

8   right to access "a sealed indictment that has been superseded and never been the

9   subject of an appearance by any defendant . . . . Where no defendant is ever arrested

10  on or appears on an indictment, none of [the Federal Rules of Criminal Procedure]

11  require that the indictment be unsealed."  Government's Opp'n at 8-9.

12         AIG relies on United States v. Kott, 380 F. Supp. 2d 1122 (C.D. Cal. 2004)

13  to argue that it has a right of access to the sealed Indictment.  But the district court

14  in Kott held only that the balancing of interests under the First Amendment

15  weighed in favor of public access to the indictment in that particular case, not that

16  there was a general right to access.  Id. at 1125 ("a court may only maintain a

17  sealing order where the right of access is overcome by an overriding right or

18  interest, essential to preserve higher values.") (citation omitted).

19         Further, AIG is mistaken in arguing that there is "no legal basis to keep the

20  Indictment permanently sealed."  Pl.'s Mem. of P. & A. at 6.  Although the Ninth

21  Circuit has recognized both a First Amendment right of access to court documents

22  and a common law right of access, neither right compels this Court to unseal the

23  sealed Indictment.  "[B]oth the common law and First Amendment standards

24  _____

25  [7] AIG's current Motion is just the latest in a series of groundless attempts to obtain
    confidential records of scant evidentiary value.  Not surprisingly, AIG has been
26  rebuffed in these efforts.  As mentioned, both the Federal Reserve and Magistrate
    Judge Woehrle rejected similar speculative justifications offered in support of
27  AIG's attempts to seek information from prior federal investigations.  Aenlle-Rocha
    Decl. at Ex. C at 239 (AIG has "not identified how the information [it] seek[s] is
28  relevant to any issue in [its] claim against CL in this litigation."); Ex. B at 156.

1  ultimately involve a balancing test," McVeigh, 119 F.3d at 812, and under both
2  standards the interests weigh in favor of maintaining the Indictment under seal.

3        **1.    AIG Does Not Have a Right of Access to the Sealed Indictment**
4              **under the First Amendment**

5        AIG has no First Amendment right to access the sealed Indictment in this
6  case.  To evaluate the First Amendment right of access, courts apply the
7  "experience and logic" test and evaluate: (1) whether the document has historically
8  been open and available to the public, and (2) "whether public access plays a
9  significant positive role in the functioning of the particular process in question."
10 Press-Enter. Co. v. Superior Court, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1
11 (1986) (citation omitted).  The Supreme Court has made clear that, even where the
12 First Amendment's qualified right of access attaches to a public record, the right "is
13 not absolute."  Id. at 9 (citation omitted).  If a qualified First Amendment right of
14 access is found, "the district court may then seal the documents only if 'closure is
15 essential to preserve higher values and is necessary to serve that interest.'"
16 McVeigh, 119 F.3d at 812-13 (citing Press-Enterprise Co., 464 U.S. at 510).

17       AIG relies heavily on the district court's decision in Kott, 380 F. Supp. 2d at
18 1122, but fails to address the obvious distinctions between the two cases.  In Kott,
19 the First Amendment right of access was applied to a news organization, Dow
20 Jones on behalf of The Wall Street Journal, for the purpose of informing the public
21 so that "it is armed with enough information to know what questions to ask."  Id. at
22 1124.  Dow Jones sought the sealed indictment to "serve as a check upon the
23 judicial process," Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606, 102
24 S. Ct. 2613, 73 L. Ed. 2d 248 (1982), where it questioned the "fairness and
25 propriety of the plea agreement."  Aenlle-Rocha Decl. at Ex. E at 275-76.

26       In stark contrast, AIG seeks the sealed Indictment for personal benefit and
27 consumption, not for public information and dissemination.  Consequently, the First
28 Amendment value of informing the public is not at issue in this proceeding.  As

- 11 -

1    Judge Walter accurately observed regarding AIG's efforts to gain access to other
2    sealed court documents, "while AIG feigns concern over the public interest and the
3    functioning of the criminal justice system, it merely wants these materials for its
4    own private litigation interests, not to serve as a curb on prosecutorial misconduct
5    or to educate the public."  Aenlle-Rocha Decl. at Ex. A at 54.

6         Additionally, <u>Kott</u> did not present the same privacy concerns at issue here.
7    Two individuals in <u>Kott</u> were named in the sealed Indictment — Kott and one other
8    defendant.  <u>Kott</u>, 380 F. Supp. 2d at 1123.  Here, there are multiple individuals
9    named in the sealed Indictment who were never prosecuted and whose privacy
10   interests are at stake, as discussed below.[8]  Aenlle-Rocha Decl. ¶ 2.  These
11   individuals will not have the opportunity to appear before this Court to oppose
12   AIG's Motion and protect their privacy interests.

13        Finally, unlike <u>Kott</u>, the USAO here moved to permanently seal the
14   Indictment pursuant to a negotiated plea agreement that the Court approved.  There
15   was no such provision in the plea agreement between Kott and the USAO.  Aenlle-
16   Rocha Decl. at Ex. F at 284-343.  The plea agreement in <u>Kott</u> compelled the  USAO
17   not to prosecute any additional charges arising out of the transactions alleged in the
18   indictment, but did not obligate the USAO to move to permanently seal the
19   indictment.  <u>Id.</u> at 300-01.  In contrast, CL, the CDR Parties, MAAF, and Mr. Seys
20   bargained for and secured the USAO's agreement to move to seal the Indictment
21   permanently.  Elizabeth Decl. at Ex. 2 at 105-06.  Moreover, in accepting the guilty
22   pleas, the Court agreed to fulfill the parties' agreements to seal the Indictment,
23   pursuant to Fed. R. Crim. P. 11(c)(1)(C).[9]  <u>See</u> <u>Santobello v. New York</u>,  404 U.S.

---

24   [8] "As the court could determine from a review of the Original Indictment, it
25   contains specific allegations of criminal conduct by individuals other than those
     charged in the First Superseding Indictment or who entered guilty pleas or entered
26   into settlement agreements."  Government's Opp'n at 19.
     [9] The plea agreements in this action were effectively contracts between the
27   Government and the Defendants that executed them, and the Court which accepted
     their terms, pursuant to Fed. R. Crim. P. 11(c)(1)(C).  <u>See</u> <u>United States v. Clark</u>,
28   218 F.3d 1092, 1095 (9th Cir. 2000); <u>United States v. Keller</u>, 902 F.2d 1391, 1393

- 12 -

1    257, 262, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971) ("[W]hen a plea rests in any

2    significant degree on a promise or agreement of the prosecutor, so that it can be

3    said to be part of the inducement or consideration, such promise must be

4    fulfilled.").  The USAO also agreed to permanently seal the Indictment in its non-

5    criminal settlement agreements with Artemis, Francois Pinault, Patricia Barbizet,

6    Marie-Christine de Percin, and Emmanuel Cueff.  Aenlle-Rocha Decl. at Ex. G at

7    361-62.

8           Maintaining the sealed Indictment is not merely a matter of importance for

9    the parties to these plea agreements and settlements.  Failure to honor the terms of

10   the plea agreement by unsealing the Indictment may have a chilling effect on future

11   plea agreements and settlements in other cases.  See McVeigh, 119 F.3d at 814

12   (finding adequate basis for the district court's decision to redact a sealed severance

13   motion requested by a news organization as "necessary to avoid chilling the sort of

14   candor needed to assess whether separate trials were necessary") (citation omitted);

15   United States v. Corbitt, 879 F.2d 224, 238 (7th Cir. 1989) (recognizing that

16   providing a presentence report to a third party could have a "chilling effect on the

17   willingness of various individuals to contribute information that will be

18   incorporated into the report") (citing U.S. Dept. of Justice v. Julian, 486 U.S. 1, 12,

19   108 S. Ct. 1606, 100 L. Ed. 2d 1 (1988)).

20                    a.      **AIG Does Not Have a Legitimate Need for the Sealed**

21                            **Indictment**

22          AIG claims it has "legitimate need" for the sealed Indictment.  AIG claims it

23   _____

24   (9th Cir. 1990) ("Plea agreements are contractual in nature and are measured by
     contract law standards.") (citation omitted).  In construing an agreement, a court
     must determine what the defendant "reasonably understood to be the terms of the

25   agreement."  See Keller, 902 F.2d at 1393 (citing United States v. Read, 778 F.2d
     1437, 1441 (9th Cir. 1985)).  Because the Court accepted the terms of the binding

26   agreements, CL and the CDR Parties respectfully submit that the Court should
     continue to enforce the bargained-for terms of the parties' plea and settlement

27   agreements and deny AIG's motion.

28

                                              - 13 -

1   needs the Indictment "to better understand the scope and extent of Defendants'

2   criminal conspiracy and the government's response to it."  Pl.'s Mem. of P. & A. at

3   9.  AIG further claims that "the Indictment will shed light on both the USAO's

4   views of the relationships between the Defendants and the scope and nature of the

5   Defendant's unlawful activity" arguing that these issues "are relevant to

6   understanding how the Federal Reserve Board and the USAO would have treated

7   the Defendants had the fraud come to light in 1994."  Pl.'s Mem. of P. & A. at 9.

8   Judge Walter rejected identical arguments at the July 1, 2011 hearing when he

9   denied AIG's request for access to sealed court documents and found that "[t]hese

10  vague, generalized, and speculative assertions are completely insufficient to

11  demonstrate a legitimate need and certainly are insufficient to demonstrate that the

12  information cannot be obtained elsewhere, especially given the extensive and

13  lengthy discovery that has been conducted . . . ."  Aenlle-Rocha Decl. at Ex. A at

14  59.  AIG puts forth the same vague and speculative arguments before this Court in

15  the hopes that a different judge will render a different result.  However, AIG's

16  inadequate justifications for obtaining the sealed Indictment must fail when

17  weighed against the interests of honoring bargained-for plea and settlement

18  agreements, and protecting the privacy interests of individuals named in the sealed

19  Indictment who were never prosecuted.

20          **b.     That Facts in the Sealed Indictment Have Become Public**

21                   **Does Not Impact the Sealed Indictment**

22          AIG mistakenly relies on the existence of a news article publishing

23  information regarding the sealed Indictment to argue that the Indictment no longer

24  needs to be sealed.  Rather than bolster AIG's specious argument for disclosure,

25  AIG's access to publicly available facts from the Indictment and volumes of

26  information regarding the USAO's investigation and negotiations with CL and the

27  CDR Parties support maintaining the sealed Indictment.  That information

28  regarding the sealed Indictment is publicly available from news sources undercuts

- 14 -

1    rather than bolsters AIG's claim of legitimate need for the sealed Indictment.  As

2    Judge Walter explained when he denied AIG's motion to unseal pleadings and

3    grand jury testimony, "[i]f one carefully reviews the plea agreements, settlement

4    agreements, and other publicly-filed documents in the criminal case, the full scope,

5    details, and nature of the conspiracy are fully discussed and the roles of the co-

6    conspirators, charged and uncharged, are clearly described. . . . [T]he incremental

7    value and public access in this case is minimal in comparison to the significant

8    privacy interests that would be jeopardized."  Aenlle-Rocha Decl. at Ex. A at 55.

9        **2.    AIG Does Not Have a Common Law Right of Access to the Sealed**

10           **Indictment**

11       "Historically, courts have recognized a 'general right to inspect and copy

12   public records and documents, including judicial records and documents.'"

13   Kamakana v. City & County of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006)

14   (citing Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597, 98 S. Ct. 1306, 55 L.

15   Ed. 2d 570 (1978)).  "[T]he interest of citizens in 'keep[ing] a watchful eye on the

16   workings of public agencies'" justifies this right.  Id. (citing Nixon, 435 U.S. at

17   598).  Although the Ninth Circuit recognizes a presumption in favor of the common

18   law right of access, Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135

19   (9th Cir. 2003), courts recognize that this right of access is not absolute.  See

20   Nixon, 435 U.S. at 598 ("[T]he right to inspect and copy judicial records is not

21   absolute"); Kamakana, 447 F.3d at 1178 ("[A]ccess to judicial records is not

22   absolute"); In re Copley Press, 518 F.3d 1022, 1029 (9th Cir. 2008) (recognizing a

23   common law right of access, but finding that "this right is not absolute") (citation

24   omitted).

25       In determining whether to grant access to sealed documents, courts must

26   "'conscientiously balance[] the competing interests of the public and the party who

27   seeks to keep certain judicial records secret."  Kamakana, 447 F.3d at 1179 (citing

28   Foltz, 331 F.3d at 1135).  Moreover, the Supreme Court has recognized that the

- 15 -

1   right of access does not permit improper use of materials including for "private

2   spite, [to] promote public scandal," or as a "source[] of business information that

3   might harm a litigant's competitive standing." <u>Nixon</u>, 435 U.S. at 598 (citation

4   omitted); <u>see</u> <u>United States v. Amodeo</u>, 71 F.3d 1044, 1051 (2d Cir. 1995)

5   ("Commercial competitors seeking an advantage over rivals need not be indulged in

6   the name of monitoring the courts, and personal vendettas similarly need not be

7   aided.").  Additionally, "privacy rights may outweigh the public's interest in

8   disclosure." <u>United States v. Smith</u>, 776 F.2d 1104, 1113 (3d Cir. 1985) (denying

9   request to unseal bill of particulars because protecting the privacy interest of third

10  parties named in the document outweighed the public's interest in access).

11      Here, AIG fails to identify <u>any</u> public interest in releasing the sealed

12  Indictment, let alone a legitimate interest.  The purpose of its request is not of the

13  type contemplated by the common law right of access, such as a "citizen's desire to

14  keep a watchful eye on the working of public agencies" or "a newspaper publisher's

15  intention to publish information concerning the operation of government." <u>Nixon</u>,

16  435 U.S. at 598 (citations omitted).  Rather, AIG wants to use this information for

17  its private, personal gain in the Civil Case by seeking improperly to attack the

18  reputations of the civil defendants, including CL and the CDR Parties, on the basis

19  of unproven and untried allegations in a separate action.  Indeed, the virtues of the

20  common law right of access are undermined by AIG's attempt to resurrect

21  dismissed allegations that have no evidentiary value in the Civil Case or this

22  proceeding.

23      Additionally, the privacy interests of individuals named in the sealed

24  Indictment, who were never prosecuted, outweigh AIG's purported interests.  The

25  Court has "a compelling governmental interest in making sure its own process was

26  not utilized to unnecessarily jeopardize the privacy and reputational interests of the

27  named individuals." <u>Smith</u>, 776 F.2d at 1114 ("The individuals on the sealed list

28  are faced with more than mere embarrassment. . . .  [P]ublication of the list might

- 16 -

CRÉDIT LYONNAIS AND CDR PARTIES' OPPOSITION TO
AIG'S MOTION TO UNSEAL INDICTMENT

1  be career ending for some . . . [and] will inflict serious injury on the reputations of

2  all."). Here, there are individuals and/or entities named in the sealed Indictment

3  that were never prosecuted and whose privacy interests are at stake. Privacy

4  interests can outweigh even legitimate claims to release otherwise public court

5  documents. Id. at 1113. Disclosure of allegations against individuals named in the

6  sealed Indictment who were never prosecuted could cause serious reputational

7  harm. As the Government explains in its opposition, "the procedural posture of this

8  case (the bulk of the charges in the Original Indictment dismissed, and no

9  proceedings having been conducted on it) leaves these individuals without any

10  forum in which to exonerate or explain themselves if the Original Indictment is

11  unsealed." Government's Opp'n at 19. Accordingly, given the risk of serious

12  reputational injury, the privacy interests of others (who have received no notice or

13  been afforded any opportunity to be heard) greatly outweigh AIG's weak personal

14  justification for seeking access to the sealed Indictment.

15       In sum, the articulated privacy interests and public interest in respecting

16  bargained-for binding plea agreements outweigh AIG's self-serving request for

17  expansive discovery of irrelevant and inadmissible information in the sealed

18  Indictment. Accordingly, AIG's Motion should be denied.

19                                    **IV.**

20                              **CONCLUSION**

21       For the above reasons, the Court should deny AIG's Motion to Unseal

22  Indictment.

23                                        Respectfully submitted,

24  Dated:  August 8, 2011                 WHITE & CASE LLP

25                                         By:____/s/ Fernando L. Aenlle-Rocha____

26                                            Fernando L. Aenlle-Rocha

27                                         *Attorneys for Consortium de Réalisation*
                                           *S.A. and CDR Entreprises, formerly*
28                                         *known as Altus Finance S.A.*

                                  - 17 -

1

2    Dated:  August 8, 2011              CLEARLY GOTTLIEB STEEN &
                                          HAMILTON LLP
3

4                                         By:_____/s/ Avram E. Luft_____
                                                   Avram E. Luft
5
                                          *Attorneys for Crédit Lyonnais S.A.*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 18 -

CRÉDIT LYONNAIS AND CDR PARTIES' OPPOSITION TO
AIG'S MOTION TO UNSEAL INDICTMENT